### SEARS, administrator, *vs.* BAGWELL.

1. A levy which describes property levied on by reference to a record which makes it certain, is sufficient.

(*a*.) Where a deed to which a levy referred for particular description of thirteen acres, on which it was made, conveyed two hundred and sixty-one acres of lots of land numbers 40 and 33. in a county named, stated that the parts of those lots conveyed lay broadside to each other on Flat creek, and reserved thirteen acres, including the shoals and water power through the land, so far above the shoals as necessary for any machinery that may be put up, together with the use of timber with which to build, the right of way to and from the shoals, etc., such description would seem to be sufficient as a basis for a levy on the thirteen acres.

(*b*.) At all events, the rights of a purchaser having intervened, it was proper to admit the levy in evidence and leave its sufficiency to the jury.

2. The claim laws in this state are cumulative and permissive, not mandatory.   The mere failure to file a claim to land levied on, will not estop the owner from subsequent assertion of title thereto.

3. After the rights of a purchaser under a sheriff's sale had intervened, the question being left to the jury whether the levy and deed thereunder were void for uncertainty of description, testimony identifying the property was admissible.

September 12, 1882.

v 69—28

Levy and Sale.   Evidence.   Claim.   Laws.   Before
Judge WELLBORN.   Hall Superior Court.   February
Term, 1882.

To the report contained in the decision it is only nec-
essary to add, in connection with the third division there-
of, that Bagwell was permitted to testify as follows, over
the objection of plaintiff: Knew the land in dispute. His
son purchased it at the coroner's sale.   Since said sale
his son had paid taxes on the land.   Had never lived on
or improved it, or cultivated it, or inclosed it, or had any
tenant on it.   There was an old fence on it, which his son
removed two or three years after the sale, and an old
house which fell down some six or seven years after the
sale.   His son had sold off the plank.   Odell owned the
land before the sale.   In his lifetime he never made any
objection.   The place was known as the Odell shoals.
Odell had run around a tract there, and put it in his
homestead, but the homestead appraisers disallowed it.
Witness' understanding was, there was sixteen acres in it.
Never saw it run around, but saw a corner. Caldwell sur-
veyed it after Odell's death.   Saw that line.

W. L. MARLER ; H. H. PERRY, for plaintiff in error.

J. B. ESTES & SON, for defendant.

CRAWFORD, Justice.

In 1868 John E. Odell sold Nevill Bennett 261 acres of
land, consisting of forty-one acres on the east side of
fractional lot No. 40, and 220 acres of No. 33, lying
broadside to each other and on Flat creek, excepting and
reserving therefrom 13 acres, which included certain
shoals on the said creek.

Soon after this sale a judgment was obtained against
Odell, and the *fi. fa.* issuing from same was levied upon
the entire tract, the 13 acres included ; none, however,

was actually sold, except that reservation, which was bought by J. D. Bagwell, the defendant in this suit. In 1879, ten years after, this suit in ejectment was brought for the recovery of the whole 261 acres, with demises from the original grantees, the administrator of Odell, and of Bennett. The real litigation, however, was over the 13 acres reserved in the deed, sold by the sheriff as Odell's property and bought by Bagwell.

The testimony of the plaintiff consisted of the original plats and grants to the two lots, the letters of administration on the estate of Odell, and- the deed of Odell to Bennett.

That of the defendant was a deed from the coroner, the judgment, *fi. fa.*, levy, and the record of the deed to Bennett referred to in the levy, all of which was introduced over the objections of plaintiff's counsel.

1. With this statement of the facts of the case, we come to the first question made by the record and to be passed upon by this court, and that is whether the levy under which the land was sold was void for uncertainty. It was levied " upon fractional lot of land No. 40 in the eighth district of Hall county, lying on Flat creek, the same being 41 acres off the east side of said lot·40, and also upon fractional lot No. 33, in said eighth district of said county, the same being 220 acres of lot 33, all lying broadside to each other and all containing two hundred and sixty-one acres, more or less, including thirteen acres that was reserved when defendant sold said land to Nevill Bennett, all of which said land is described in a deed made by defendant, J. E. Odell, to said Bennett, and recorded in the clerk's office of Hall county." The deed referred to recites the sale of the above described lands, "except 13 acres of land, including the shoals, use of timber to build to the shoals, right of way to and from said shoals for most conveniency to the neighborhood, if there should be any machinery put up to said shoals, water-power excepted through said lands so far above the shoals

as necessary for any machinery that may ever be put up at said shoals on Flat creek, on fractional lots Nos. 40 and 33 in the eighth district of Hall county."

That a levy is sufficient which refers to a record that makes it certain, is no longer a contested question in this state. 27 *Ga.*, 200.

Whilst this levy, taken by itself, may be insufficient to identify the land, yet, are not the descriptive facts so specified in the deed as to guide the parties in locating it? To say 13 acres of land reserved out of 261 sold off of lots 40 and 33 could give no well defined idea of where it lay. But when it says that the parts of lots 40 and 33 sold lie broadside to each other on Flat creek, and that 13 acres off these lots are reserved, including the shoals and water-power through the land, so far above the shoals as necessary for any machinery that may be put up, together with the use of timber to build, the right of way to and from the shoals, etc., it seems to us that that water-power, known as the shoals on that creek, and in so small a body of land, would form such a distinctive locality as not to be misunderstood. 59 *Ga.*, 711.

At all events the court did right not to rule out the evidence, and in holding that it might go to the jury and the question of sufficiency be inquired into by them, the rights of a purchaser having intervened. 65 *Ga.*, 201.

To hold that this reservation was void for uncertainty, would be to invalidate the titles to probably half the country churches, and nearly all the private family burial grounds in the state.

2. The next question for our consideration and upon which error is assigned, is that the judge charged the jury, that although the levy might be void for uncertainty, and the sale under it void, yet if it appeared from the evidence that Bennett was living on the land at the time of the levy, the presumption is that he was duly notified, and that it was his duty to come forward and file a claim to the land, and if he failed to do so, then that he was estopped from claiming the land now.

We hold this charge to be error, as may be seen in the case of *Bodega et ux. vs. Perkerson*, 60 *Ga.*, 516; and *Whittington vs. Doe ex dem. Wright*, 9 *Ga.*, 28. In these cases it was held that our claim laws were cumulative—permissive and not mandatory.

The case, therefore, must be remanded for a new trial, as it may have been that it was under this charge of the court that the verdict was rendered for the defendant.

3. The last assignment of error is upon the admission of the testimony of Berry Bagwell as to the identity of the land described in the levy, because the same was irrelevant and illegal. In this case, the land had been sold ten years before the beginning of the suit, and as the property of Odell; it was reserved by Odell out of 261 acres sold and conveyed to Bennett, and described in his deed; J. D. Bagwell was the purchaser at the coroner's sale; one of the demises was in the name of Bennett, and another in the name of Odell's administrator. The levy being objected to by them because of an insufficient description of the land, and the deed being objected to because it was void for uncertainty, made the question of identity the important one in the case. The testimony, therefore, on that point was both legal and relevant, and being after the sale of the land and after the rights of a purchaser had intervened, it was properly allowed to go to the jury. 65 *Ga.*, 201.

Judgment reversed.